DECISION ON OBJECTIONS TO THE MAGISTRATE'S DECISION
{¶ 1} Relator, Donald F. Setele, has filed this original action requesting that this court issue a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate its order denying compensation for permanent total disability and to grant the requested compensation.
 {¶ 2} This matter was referred to a court-appointed magistrate pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth District Court of Appeals. The magistrate issued a decision, including findings of fact and conclusions of law, and recommended that this court deny relator's request for a writ of mandamus. (Attached as Appendix A.) Relator has filed objections to the magistrate's decision.
 {¶ 3} Relator challenges the commission's reliance upon the vocational report of Janet Chapman, asserting that such report is flawed because Chapman incorrectly relied on the report of Dr. Edward Covington. Relator also contends that Dr. Covington's report cannot be relied upon because both Chapman and the commission misinterpreted the report. The alleged misinterpretation stems from Dr. Covington's statement that relator's prognosis was "poor."
 {¶ 4} The magistrate rejected relator's argument that the commission relied on the report of Dr. Covington, noting that the commission indicated in its order that the only medical report it relied upon was the 2002 report of Dr. Timothy Gordon. The magistrate found that the mere recitation of some points from Dr. Covington's report did not constitute reliance. Alternatively, the magistrate concluded that, even if the commission relied on Dr. Covington's report as evidence of the injured worker's ability to perform sedentary work, such reliance was not an abuse of discretion. We agree.
 {¶ 5} Relator takes issue with the report of Dr. Covington because the commission did not appear to consider the entire report. While Dr. Covington concluded that relator was capable of completing an eight-hour day, he also stated, as noted above, that relator's prognosis was "poor."
 {¶ 6} However, we agree with the magistrate's conclusion that Dr. Covington's statement regarding the injured worker's prognosis is "somewhat ambiguous," and lends itself to two different interpretations, i.e., Dr. Covington may have been referring to the injured worker's medical impairment, or to his lack of motivation to return to work. In his report, Dr. Covington noted that the injured worker "achieved 165 min/day of physical activity with good tolerance," and has "the ability to complete an 8 hour day," and he further reported that relator "has no intention on returning to work while his medical issues continue and made this very clear." Dr. Covington also found that "[t]here were 2/5 Waddell's signs." Taken together, and as noted by the magistrate, Dr. Covington's findings that the injured worker is capable of returning to work, but is not motivated to do so, is not inconsistent with findings by staff members of the Cleveland Clinic Foundation regarding relator's capabilities. Accordingly, even assuming the commission relied on Dr. Covington's report, the commission did not abuse its discretion in giving greater weight to Dr. Covington's entire narrative rather than a one-word statement, nor was the commission required to adopt the interpretation urged by relator.
 {¶ 7} Relator next cites to the magistrate's finding that relator participated in a volunteer program at the Veterans Administration in February 2000, but was reportedly unable to perform the assigned desk job for more than two hours. Relator contends that both the commission and Chapman ignored this fact. However, there is also evidence, based upon the report of Dr. Gordon, that the injured worker could perform sedentary work for eight hours. Given that there was some evidence upon which the commission could rely in reaching its determination, relator has not shown an abuse of discretion.
 {¶ 8} Relator also takes issue with the magistrate's finding that, in May 1998, Dr. Mahna examined relator and concluded that he had not yet reached maximum medical improvement. The objection is based on the commission's use of this report to show that relator could do sedentary work. Relator alleges that the report is flawed because it was written prior to a third surgery, and prior to additional allowances.
 {¶ 9} The magistrate noted that no copy of Dr. Mahna's report was included as part of the record, and, thus, the magistrate declined to "consider an extraordinary writ based upon a medical report that relator did not present for the court's consideration." This court's review of the record similarly reveals no copy of this report. We further note that the commission only makes reference to this report in one sentence of its report, and it is not clear that the commission actually relied upon this report. Finally, excluding the report of Dr. Mahna, the record contains other evidence upon which the commission could conclude that the injured worker was capable of sedentary work.
 {¶ 10} After an examination of the magistrate's decision, an independent review of the record pursuant to Civ.R. 53, and due consideration of relator's objections, we overrule the objections and find that the magistrate sufficiently discussed and determined the issues raised. Accordingly, we adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained therein, and deny relator's request for a writ of mandamus.
Objections overruled; writ of mandamus denied.
Klatt and Watson, JJ., concur.
 APPENDIX A IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT
State of Ohio ex rel. Donald F. Setele, : Relator, : v. : No. 03AP-560 Business Interlink Services Inc. and : (REGULAR CALENDAR) The Industrial Commission of Ohio, : :
Respondents. :
 MAGISTRATE'S DECISION Rendered on October 31, 2003 Donald M. Levy, for relator.
Jim Petro, Attorney General, and Paul H. Tonks, for respondent Industrial Commission of Ohio.
IN MANDAMUS
 {¶ 11} In this original action in mandamus, relator, Donald F. Setele, asks the court to issue a writ compelling respondent Industrial Commission of Ohio ("commission") to vacate its order denying compensation for permanent total disability ("PTD") and to issue an order granting the requested compensation.
Findings of Fact:
 {¶ 12} 1. In November 1996, Donald F. Setele ("claimant") sustained an industrial injury, and his workers' compensation claim was allowed for a fractured left fibula, fractured left tibia, nonunion of the tibial fracture, and lumbosacral sprain. Claimant underwent two surgeries to treat the leg.
 {¶ 13} 2. In May 1998, claimant was examined by Dr. Mahna, who concluded that claimant had not yet reached maximum medical improvement, according to a description provided in the commission's order, quoted infra.
 {¶ 14} 3. A third surgery was performed in 1999 due to nonunion of the tibia, after which the tibial fracture healed.
 {¶ 15} 4. In November 1999, claimant began a return-to-work program for three months at the Cleveland Clinic Foundation ("CCF"), including work hardening and treatment, but claimant did not secure a new job, according to a summary that was prepared after another CCF program in July 2000.
 {¶ 16} 5. In February 2000, claimant participated in a volunteer program at the Veterans Administration, but he was reportedly unable to perform the assigned desk job for more than two hours.
 {¶ 17} 6. Because the treating physician continued to indicate that a full-time return to work was a feasible goal, the rehabilitation division of the Ohio Bureau of Workers' Compensation ("BWC") referred claimant in March 2000 for further rehabilitation.
 {¶ 18} 7. In July 2000, claimant attended a Chronic Pain Rehabilitation Program at CCF. A report was prepared by Edward C. Covington, M.D., who reviewed claimant's medical history as well as rehabilitation efforts, both physical and vocational. Dr. Covington described the course of treatment in the program as follows:
Physical Reconditioning: Assessment revealed normal lumbar range of motion. His gait was moderately antalgic. There were 2/5 Waddell's signs and he scored 4.5/10 on the UAB pain behavior scale. He walked 0.18 miles at an average of 1.8 mph on the 6 min treadmill test. He lifted 22# 12 inches off the floor with poor body mechanics, and 22# from waist to shoulders.
He attended 9/9 physical therapy classes during admission in the CPRP. He didn't show for one physical therapy session and at times couldn't be found during the treatment day. Classes included land and aquatic physical therapy, individual sessions, and weekly educational lectures. Mechanical evaluation of the spine at discharge revealed a minimal loss of lumbar extension. He achieved 165 min/day of physical activity with good tolerance. Current cardiovascular and strength training is as follows: stationary bike 30 min at his target heart rate, 112# x 15 reps leg press, 8# x 15 reps all arm weight training. * * *
* * *
Psychotherapies: He was marginally participatory in psychotherapy. He has no intention on returning to work while his medical issues continue and made this very clear. He is filing another claim with Workers [sic] Compensation re his shoulder pain which developed following use of crutches. * * *
* * *
Mr. Setele has completed an extensive Work Hardening Program and one week in the Chronic Pain Rehab Program. Despite demonstrating tolerance to work activities in the work hardening program, and the ability to complete an 8 hour day (165 min of that performing physical activity), Mr. Setele has not returned to gainful employment and reports inability to return to a 2 hour sedentary volunteer job. AT this time, further skilled physical therapy is unlikely to be beneficial. All goals set in such programs have been achieved. * * *
Dr. Covington also noted that claimant's reason for participating in the work-hardening and pain-management programs was that "my money would stop if I didn't come," and Dr. Covington opined that claimant's prognosis was "poor."
 {¶ 19} 8. In August 2000, the BWC closed the rehabilitation file. In the closure report, Pat Hulic, R.N., noted on the CCF assessment that claimant could stand for one hour, walk for 20 to 30 minutes, and perform light work tasks, but she also noted the information that he could not tolerate work beyond two hours. With respect to the pain-management program, she wrote that claimant "was discharged after one week with the verbal report that a return to work goal could not be met."
 {¶ 20} 9. In 1999, the claim was additionally allowed for sprain/strain of the right shoulder and ulnar neuritis.
 {¶ 21} 10. In March 2002, claimant filed a PTD application supported by a medical report from his treating physician. Claimant stated that he had graduated from high school and attended Ohio State University for more than one year.
 {¶ 22} 11. In August 2002, claimant was examined on behalf of the commission by Timothy L. Gordon, M.D., who described his findings as follows:
PHYSICAL EXAMINATION reveals he ambulates indepen-dently without a limp. Heel and toe raise intact.
Examination of the right shoulder revealed no tenderness. He was instructed to report tenderness if it occurred. He demonstrated active elevation to 160°, extension, internal rotation to lower thoracic. No crepitus with motion. Good resistive abduction and external rotation strength. No atrophy. Right upper extremity reflexes symmetric. He reported decreased sensation at the 5th finger. Mildly positive Tinel's over the ulnar nerve at the elbow. Intrinsic function of the hand intact. Good resistive strength. Right dominant arm slightly larger in circumference compared with the left.
Examination of the low back he reported tenderness in the lower mid-lumbar region. Demonstrated forward flexion fingertips to mid shin level. In the lower extremities, reflexes symmetric. Sensation intact other than over the area of the prior left lower leg wounds. Good resistive strength. Negative sitting straight leg raise at 90° bilaterally.
Examination of the left lower leg revealed some thickening of the distal third of the tibia, remote wounds over the anterior medial aspect to approximately 8 cm in area. Posterior lateral incision. He reported tenderness in the area of the healed fracture. Fracture stable. Good alignment clinically. Left leg length less than 1 cm shorter than the right. Calf measurements similar. Good range of motion of the ankle. Similar to the right with mild decreased eversion.
Dr. Gordon concluded that claimant was capable of sedentary work activities. He assessed two percent impairment for the right shoulder, four percent for the ulnar neuritis, five percent for the lumbosacral spine, and ten percent for the right leg, for a combined impairment of 20 percent. In addition to the narrative report, Dr. Gordon completed a physical capacities checklist on which he indicated that claimant could perform sedentary work as defined on the form.
 {¶ 23} 12. Barbara E. Burk and Janet Chapman submitted vocational reports.
 {¶ 24} 13. In March 2003, the PTD application was heard by a staff hearing officer, who relied on Dr. Gordon and Ms. Chapman in denying compensation:
* * * This order is based upon the medical report of Dr. Gordon and the vocational and employability assessment of Ms. Chapman.
Claimant is a sixty-four year old former Hi-Low driver who sustained serious left leg fractures when the vehicle he was driving struck a pole. The left lower leg injury required three surgeries. This claim is also allowed for soft tissue injuries to the low back and right shoulder. Claimant is a high school graduate and he attended Ohio State University for one and one-half years. Claimant's prior positions have included doing warehouse work, grooming horses, being the owner and president of a dog grooming business for fourteen years and working as a draftsman apprentice in civil engineering. Claimant also has a history of being involved in various aspects of the horse racing business for over twenty years including owning race horses.
Dr. Gordon examined claimant for the Industrial Commission and concluded that claimant is capable of sedentary work. On 05/16/1998, Dr. Mahna examined claimant and concluded that although he was not yet at a level of maximum medical improvement, he should be able to perform sedentary work. The 07/21/2000 discharge summary of Dr. Covington from the Cleveland Clinic Chronic Pain Rehabilitation Program indicated that claimant completed an extensive work hardening program and one week in a chronic pain rehabilitation program. Dr. Covington indicated that claimant demonstrated a tolerance to work activities in the work hardening program and the ability to complete an eight hour day, including 165 minutes of physical activity. Based upon the above, the Staff Hearing Officer has relied upon Dr. Gordon's report and finds that claimant is physically capable of performing work activity at a sedentary level.
Ms. Chapman noted various positions that claimant could currently perform considering the restrictions imposed by Dr. Gordon including assembler, machine engraver, quality control inspector, sorter, payroll clerk, timekeeping clerk, surveillance system monitor and telephone solicitor. Ms. Chapman indicated that claimant's advancing age, although not alone work prohibitive, may be a negative factor in adjusting to work unlike that previously performed. The Staff Hearing Officer finds, however, that the adjustment to a sedentary position would not necessarily mean going to a type of position totally unfamiliar to claimant. Claimant has indicated on the Med-Voc 1 form that he performed daily accounting work for his business. At hearing, claimant testified to experience in retracing engineering drawings.
Ms. Chapman indicated that claimant's educational level appears to be adequate for entry-level and higher level work. Ms. Chapman added that the fact that claimant owned and operated a business suggested that he developed skills which may be useful in the clerical and service industries.
The Staff Hearing Officer finds that the weight of the medical evidence does not support claimant's allegation that he is incapable of performing sedentary work. Claimant's work history shows that he has demonstrated that he has skills that are transferable to sedentary positions and the Staff Hearing Officer finds that claimant has the requisite education for sedentary work. * * *
 {¶ 25} 14. Reconsideration was denied.
Conclusions of Law:
 {¶ 26} Claimant contends that, in denying his PTD application, the commission "totally ignored evidence" and "misinterpreted medical reports to the detriment of relator." Specifically, claimant argues that the commission ignored the reports of Dr. Kaffen, Ms. Burk, Dr. Helper, and Ms. Hulic. Claimant argues that the commission improperly relied on Dr. Mahna, improperly found that claimant had performed accounting work, and failed to give sufficient weight to a word in Dr. Covington's report. Further, claimant argues that the reports of Dr. Gordon and Ms. Chapman were flawed.
 {¶ 27} First, the commission is required to cite only the evidence on which it relied. State ex rel. Bell v. Indus. Comm.
(1995), 72 Ohio St.3d 575. When the commission cites the evidence on which it has affirmatively relied, it has no obligation to identify the rejected evidence or explain its reasons for rejecting the other evidence. Id.
 {¶ 28} Further, the commission is not required to identify all the evidence that was considered. State ex rel. Lovell v.Indus. Comm. (1996), 74 Ohio St.3d 250. A presumption of regularity attaches to commission procedures unless rebutted by specific evidence of a failure of duty. Id. Sometimes an order may indicate on its face that the commission overlooked or ignored important evidence, as in State ex rel. Fultz v. Indus.Comm. (1994), 69 Ohio St.3d 327. However, relator has the burden of proving by specific evidence that the commission did not consider all the evidence pertaining to an application. Lovell.
 {¶ 29} Second, the commission as the finder of fact has sole discretion to evaluate the credibility and weight of the evidence, including expert opinions. State ex rel. Pass v.C.S.T. Extraction Co. (1996), 74 Ohio St.3d 373; State ex rel.Burley v. Coil Packing, Inc. (1987), 31 Ohio St.3d 18. Therefore, issues regarding the weight and credibility of evidence lie outside the scope of mandamus inquiry. State exrel. Teece v. Indus. Comm. (1981), 68 Ohio St.2d 165. In mandamus, the court upholds an order supported by "some evidence" regardless of whether the record includes other evidence, greater in quantity and/or quality, that supports the contrary decision.Pass, supra, at 376.
For example, the commission is not required to accept a vocational/rehabilitation report from any expert, not even its own expert. State ex rel. Jackson v. Indus. Comm. (1997),79 Ohio St.3d 266; State ex rel. Ellis v. McGraw Edison Co.
(1993), 66 Ohio St.3d 92.
 {¶ 30} In the present action, the commission stated plainly in its order that the only medical report on which it relied was the 2002 report of Dr. Gordon. The mere recitation of some points from the 1998 report of Dr. Mahna and the 2000 report of Dr. Covington does not constitute reliance on their reports as a matter of law. The magistrate finds no abuse of discretion in reciting information from other medical reports on which the commission does not ultimately rely. The commission made clear that, allthough it noted the contents of other reports, it did not rely on them. In view of the commission's repeated, affirmative statements of reliance solely upon Dr. Gordon, the magistrate rejects claimant's argument that the commission relied on reports from Drs. Mahna and Covington.
 {¶ 31} In the alternative, even if the commission did rely on Dr. Covington's report, the magistrate finds no abuse of discretion in the commission's description of his conclusions. In his 2000 report, Dr. Covington accepted the evaluation of the clinic's staff, which found that claimant possessed the physical capacity to work eight hours per day and had various specific capacities for lifting, walking, etc. However, he noted that claimant had no interest in returning to work at that time, and he also noted claimant's assertion that he could not work for two hours. Further, Dr. Covington reported claimant's statement that he was not participating in the return-to-work programs at CCF in order to achieve the goals of the programs but only because he would be paid if he attended.
 {¶ 32} Thus, Dr. Covington's one-word statement of a poor prognosis for returning to work in 2000 is somewhat ambiguous; it was not entirely clear whether he was commenting on medical impairment or claimant's lack of motivation to return to work at that time, or a combination of both.
 {¶ 33} The magistrate concludes that the prognosis statement does not does not contradict the conclusion of the CCF staff that claimant was physically capable of working for eight hours, lifting certain amounts, walking at certain rates, etc. Further, the commission could reasonably choose to give more weight to Dr. Covington's narrative discussion than to his ambiguous comment regarding prognosis. The brief comment was subject to interpretation in light of the whole report, and the commission was not required to adopt the interpretation urged by claimant.
 {¶ 34} In sum, even if the commission relied on Dr. Covington's report, the commission was within its discretion to rely on the clinic's assessment of physical capacity rather than on claimant's self-report, and it was also within the commission's discretion to give greater weight and credibility to the doctor's thorough narrative discussion rather than to an ambiguous single-word comment. With respect to Dr. Mahna's report, the magistrate notes that no copy of the report is included in the record before the court. The magistrate declines to consider an extraordinary writ based upon a medical report that relator did not present for the court's consideration.
 {¶ 35} As for the reports of Drs. Kaffen and Helper, the commission had no legal duty to rely on them or to list those reports in its order. See Lovell; Bell, supra. (In addition, the record includes no copy of a medical report from Dr. Kaffen but only a description in a vocational assessment, which is not medical evidence.) Similarly, the commission had no obligation to rely on or even mention the closure report of Ms. Hulic or the vocational evaluation of Ms. Burk. Id.
 {¶ 36} Furthermore, although claimant seeks to have the court accept Ms. Hulic's statements of claimant's medical incapacity for work as set forth in her closure report, the magistrate notes that her report was not medical evidence on which the commission could rely in making a determination of physical capacity for employment. A vocational report or a physical therapist's report is not equivalent to a doctor's medical report and cannot serve as evidence of medical capacity. E.g., State ex rel. Shields v.Indus. Comm. (1996), 74 Ohio St.3d 264.
 {¶ 37} With respect to work history, claimant argues that the commission improperly found that claimant had accounting ability, and claimant points to Ms. Burk's report that he merely made handwritten entries without skills on calculators or computers. In its order, however, the commission stated as follows: "Claimant has indicated on the Med-Voc 1 form that he performed daily accounting work for his business." In mandamus, claimant has not included a copy of the Med-Voc form for the court's review. Further, the commission was not obliged to accept any of Ms. Burk's report. In addition, the commission did not conclude that claimant could return to work "as an accountant" but merely indicated that claimant would not have insurmountable difficulty in adapting to clerical work because he had stated that he was accustomed to keeping the books for his business. The magistrate finds no abuse of discretion.
 {¶ 38} Last, the magistrate finds no defect in the reports of Dr. Gordon or Ms. Chapman that would remove them from evidentiary consideration. Claimant argues that Dr. Gordon should have commented on the BWC rehabilitation file because it proved that claimant could not perform volunteer work and was deemed to be disabled. However, an examining physician's role is to observe and evaluate physical status/capacity at the time of his or her own examination, and there is no obligation to rely on the clinical findings of other physicians or to evaluate any vocational factors. State ex rel. Foley v. Vulcan Mfg. Co.
(1998), 84 Ohio St.3d 59; State ex rel. Domjancic v. Indus.Comm. (1994), 69 Ohio St.3d 693; State ex rel. Catholic Dioceseof Cleveland v. Indus. Comm. (1994), 69 Ohio St.3d 560. In 2002, Dr. Gordon performed a clinical examination, reviewed the medical history, and provided a narrative medical report. His report is not defective as a matter of law because he did not comment on a vocational/rehabilitation report written in 2000.
 {¶ 39} With regard to the checklist for work capacity, the magistrate finds no fatal defect in Dr. Gorden's use of the definition of sedentary work from the Ohio Administrative Code to set forth his opinion that the claimant can perform sedentary work activities. The definition provides a range of duties that fall within the category of sedentary work, and it is not necessary that a claimant be able to perform all of the duties in order to be found capable of sedentary work. See State ex rel.Wood v. Indus. Comm. (1997), 78 Ohio St.3d 414, 418. A claimant who can perform only a narrow type of sedentary work can nonetheless be found capable of performing sustained remunerative employment. Id.; State ex rel. Roy v. Indus. Comm. (1998),83 Ohio St.3d 199, 203; State ex rel. Allen v. Cleveland Bd. ofEdn. (1997), 79 Ohio St.3d 197, 199-200. Although the magistrate agrees that a physician's report — whether submitted on behalf of a claimant, employer, or the commission — is far more informative when the physician gives details as to functional capacities, the magistrate is aware of no authority that requires the commission to disqualify a medical report regarding PTD that identifies only the category of work capacity for the injured worker and does not include more additional, detailed opinions regarding functional capacity for bending, walking, sitting, reaching, standing, and so forth.
 {¶ 40} Similarly, the magistrate finds no defect in Ms. Chapman's report that would bar it from evidentiary consideration. Claimant's contention is as follows:
Ms. Chapman as did the Hearing Officer did not take Dr. Covington's total report into account. Although claimant did complete the work hardening program, in practice he could not work, and, again, Dr. Covington's prognosis was poor.
 {¶ 41} As already discussed above, Dr. Covington's one-word prognosis for a return to work was subject to interpretation. The comment was a small part of an extensive report, and a vocational evaluator (whether a vocational consultant or the commission itself) could reasonably choose to depend more heavily on the doctor's discussion of physical capacity as found by the clinic's rehabilitation staff. Further, although claimant and others have stated that he is unable as a practical matter to work, the commission was not obliged to accept their statements. The commission was within its discretion to find Dr. Gordon's findings and opinions more persuasive and to conclude that claimant is medically capable of performing sedentary work activities.
 {¶ 42} The magistrate concludes that claimant has not met his burden in mandamus of proving that he had a legal right to PTD compensation and that the commission abused its discretion by denying his application. Accordingly, the magistrate recommends denial of the requested writ of mandamus.
 /s/ P.A. Davidson
P.A. DAVIDSON MAGISTRATE