IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Larry Sours, | : | |
| Relator, | : | |
| | : | No. 22AP-31 |
| v. | : | (REGULAR CALENDAR) |
| [MGQ, Inc.] et al., | : | |
| Respondents. | : | |

D E C I S I O N

Rendered on November 21, 2023

**On brief:** *Schaffer and Associates*, *L.P.A.*, and *Thomas J. Schaffer*; *The Law Office of Carla Lombardo, LLC*, and *Carla A. Lombardo*, for relator.

**On brief:** *Eastman & Smith LTD., Sarah E. Pawlicki*, and *Melissa A. Ebel*, for respondent MGQ, Inc.

**On brief:** *Dave Yost*, Attorney General, and *Anna Isupova*, for respondent Industrial Commission of Ohio.

IN MANDAMUS
ON OBJECTIONS TO THE MAGISTRATE'S DECISION

DORRIAN, J.

{¶ 1} Relator, Larry Sours, filed this original action in mandamus seeking a writ compelling respondent, Industrial Commission of Ohio ("commission"), to vacate its order denying relator's application for permanent total disability ("PTD") compensation and to enter an order granting such compensation. Pursuant to Civ.R. 53 and Loc.R. 13(M) of the Tenth District Court of Appeals, this matter was referred to a magistrate who issued a decision, including findings of fact and conclusions of law, which is appended hereto. The magistrate recommends this court deny the request for a writ of mandamus. Having

determined the magistrate correctly concluded the commission's order was supported by some evidence, we overrule Sours's objections to the magistrate's decision and deny the writ.

{¶ 2} Sours has filed the following two objections to the magistrate's decision:

[I.] THE MAGISTRATE ERRORED IN FINDING THE INDUSTRIAL COMMISSION'S ORDER IS SUPPORTED BY SOME EVIDENCE.

[II.] THE MAGISTRATE ERRORED IN FAILING TO FIND THE BWC WAIVED ITS RIGHT TO RAISE THE AFFIRMATIVE DEFENSE OF ABANDONMENT OF THE WORKFORCE/NOT WORKING FOR REASONS UNRELATED TO THE ALLEGED CONDITIONS IN THE CLAIM.

{¶ 3} Sours has not set forth a specific objection challenging the magistrate's findings of fact. Having independently reviewed the record, we adopt the magistrate's findings as our own.

{¶ 4} As set forth in more detail in the magistrate's decision, Sours sustained a workplace injury on July 18, 2015, in the course of his employment with respondent MGQ, Inc. A workers' compensation claim was allowed for multiple conditions. Sours returned to work in a light-duty position in June 2016, but stopped working in that role after three weeks because using a computer and wearing bifocals increased his symptomatology. Sours filed an application for PTD compensation in August 2016, which was denied in December 2016.[1] In February 2017, Sours sought to amend his claims to add certain psychological conditions and sought temporary total disability ("TTD") compensation. The amendment to his claim and request for TTD compensation was granted in May 2017, and TTD compensation for the psychological conditions continued until June 2019 when he was found to have reached maximum medical improvement ("MMI") on those conditions. Also in June 2019, the Bureau of Workers' Compensation ("BWC") issued an order allowing a

---

[1] The 2016 decision denying Sours's initial PTD application acknowledged his assertion that working in the sedentary position increased his symptomatology but concluded those were subjective symptoms and not objective findings. The SHO issuing the decision found that there was no indication of any ergonomic assessment or attempt to accommodate the computer height or change Sours's glasses to improve his ability to work in the sedentary position. Therefore, the SHO concluded this did not constitute a good-faith effort to return to employment.

claim for substantial aggravation of pre-existing degenerative changes at L5-S1, and awarded TTD compensation on that condition which was paid until September 2020.

{¶ 5}  On October 5, 2020, Sours filed an application for PTD compensation. Following a hearing on March 25, 2021, a staff hearing officer ("SHO") of the commission denied the PTD application.  The SHO found that subsequent to denial of his prior PTD application, Sours failed to return to employment and made no further attempts at vocational rehabilitation.  The SHO concluded that Sours's inability to work was not related to his allowed conditions but was the result of his decision not to return to the workforce. Sours then filed a complaint in mandamus in this court.

{¶ 6}  A relator seeking a writ of mandamus as a remedy from a commission decision must demonstrate that he/she has a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief.  *State ex rel. Rouch v. Eagle Tool & Machine Co.*, 26 Ohio St.3d 197, 198 (1986).  A clear legal right to a writ of mandamus exists when the commission abuses its discretion by entering an order not supported by some evidence.  *State ex rel. Elliott v. Indus. Comm.*, 26 Ohio St.3d 76, 79 (1986).

{¶ 7}  Sours argues in his first objection that the magistrate erred by finding the commission's order was supported by some evidence.  Sours asserts the SHO failed to acknowledge that additional conditions were granted after the denial of his 2016 PTD application and that he received TTD compensation for those conditions.  Sours further argues the magistrate erred by concluding the SHO considered all allowed conditions, including those allowed after the initial PTD denial, and asserts the general language in the order indicating the SHO had considered all evidence was insufficient to meet the standards for denial of a claim.

{¶ 8}  In an order granting or denying benefits, the commission "must specifically state what evidence has been relied upon, and briefly explain the reasoning for its decision." *State ex rel. Noll v. Indus. Comm.*, 57 Ohio St.3d 203, 206 (1991).  We have held that a commission decision complies with those requirements if it "(1) specifies the evidence upon which the commission relied, and (2) explains the reasoning the commission used to reach its decision in such a manner as to enable meaningful judicial review."  *State ex rel. Altercare of Hartville Ctr., Inc. v. Ford*, 10th Dist. No. 20AP-165, 2021-Ohio-4088, ¶ 7.

Although the commission is required to consider all of the evidence before it, it is not required to list each piece of evidence considered in its decision. *State ex rel. Digiacinto v. Indus. Comm.*, 159 Ohio St.3d 346, 2020-Ohio-707, ¶ 15. Instead, the commission need only list the evidence it relied on in reaching its conclusion. *Id.* As the magistrate noted, there is a presumption of regularity in the commission's proceedings and a presumption that the commission considered all evidence before it. *Id.* at ¶ 16.

{¶ 9} In this case, the SHO's order stated that all evidence was reviewed and considered in rendering the decision. The order listed all allowed conditions, including the additional conditions that were allowed after the 2016 PTD denial. The SHO found that Sours had not returned to employment after the initial PTD denial and concluded that Sours was not working for reasons unrelated to his allowed conditions. The SHO did not rely on the subsequent medical evidence and therefore was not required to list those reports in his decision. *Digiacinto* at ¶ 15. *Compare State ex rel. Scouler v. Indus. Comm.*, 119 Ohio St.3d 276, 2008-Ohio-3915, ¶ 18-19 (reversing commission decision where the order stated that all evidence was reviewed and considered, and discussed all evidence presented, except for one medical questionnaire that could have supported a contrary result). Sours has not presented any specific evidence to rebut the presumption of regularity in the commission's proceedings or the presumption that the commission considered all evidence before it. *See State ex rel. Setele v. Business Interlink Servs.*, 10th Dist. No. 03AP-560, 2004-Ohio-3306, ¶ 28 ("[R]elator has the burden of proving by specific evidence that the commission did not consider all the evidence pertaining to an application."). The SHO's decision satisfied the requirement of specifying the evidence on which he relied and explained the reasoning for the decision. Therefore, the magistrate did not err by concluding there was some evidence to support the commission's decision.

{¶ 10} Accordingly, we overrule Sours's first objection.

{¶ 11} In his second objection, Sours asserts the magistrate erred by failing to find the BWC had waived the argument that he had voluntarily abandoned the workforce or was retired or not working for reasons unrelated to his allowed conditions. Sours claims this argument could have been asserted as a defense to the 2017 or 2019 TTD compensation proceedings, and that because it was not raised in those proceedings it was waived for purposes of his 2020 PTD application.

{¶ 12} We begin by noting that the term "voluntarily abandoned" has been removed from the PTD statute. As discussed in the magistrate's decision and this court's decision in *State ex rel. Columbus Distrib. Co. v. Reeves*, 10th Dist. No. 21AP-399, 2023-Ohio-898, prior to September 15, 2020, the statute provided that PTD would not be awarded when an employee had retired or otherwise "voluntarily abandoned" the workforce for reasons unrelated to the employee's allowed condition. The current version of the statute provides that PTD will not be granted when "[t]he employee retired or otherwise is not working for reasons unrelated to the allowed injury or occupational disease." R.C. 4123.58(D)(3). Because Sours applied for PTD compensation in October 2020 and the SHO denied his application in March 2021, the current version of R.C. 4123.58 applies to this case. *See Reeves* at ¶ 57.

{¶ 13} Notwithstanding the removal of the phrase "voluntarily abandoned" from R.C. 4123.58(D)(3), the amendment to the PTD statute did not expressly supersede prior case law regarding the doctrine of voluntary abandonment in PTD cases. *See Reeves* at ¶ 56 ("Unlike the concomitant amendments to TTD law, the new language does not contain a legislative admonishment that all prior case law on the topic is nullified by the amendment."). *Compare* R.C. 4123.56(F) ("If an employee is not working or has suffered a wage loss as the direct result of reasons unrelated to the allowed injury or occupational disease, the employee is not eligible to receive [temporary total disability] compensation under this section. It is the intent of the general assembly to supersede any previous judicial decision that applied the doctrine of voluntary abandonment to a claim brought under this section."). Accordingly, despite the statutory change, we may consider precedents addressing voluntary abandonment in PTD claims.

{¶ 14} We have held that voluntary abandonment of employment is an affirmative defense. *State ex rel. Stevens v. Indus. Comm.*, 142 Ohio St.3d 313, 2015-Ohio-1352, ¶ 17. *See also State ex rel. Jenkins v. Indus. Comm.*, 10th Dist. No. 16AP-534, 2017-Ohio-7896, ¶ 4 ("[V]oluntary abandonment of the workforce is an affirmative defense. Therefore, the burden of proof falls upon the employer or the administrator."). As an affirmative defense, voluntary abandonment is subject to waiver if not raised by the employer or the BWC. *State ex rel. Navistar, Inc. v. Indus. Comm.*, 10th Dist. No. 16AP-776, 2017-Ohio-8976, ¶ 20.

{¶ 15} In support of his waiver argument, Sours cites a Supreme Court of Ohio decision holding that the commission did not abuse its discretion by failing to determine whether a claimant's retirement precluded him from eligibility for PTD compensation when the employer failed to raise that issue in the administrative proceedings. *State ex rel. Quarto Mining v. Foreman*, 79 Ohio St.3d 78, 84 (1997). Thus, the issue of voluntary abandonment had been waived in that case because it was not raised before the commission. *See State ex rel. Crown Cork & Seal Co., Inc. v. Indus. Comm.*, 10th Dist. No. 04AP-909, 2005-Ohio-3788, ¶ 21 ("Pursuant to [*Quarto Mining*], reviewing courts do not have to consider error which the complaining part[y] could have called, but did not call, to the commission's attention at a time when it would have been avoided or corrected[.]").

{¶ 16} The claimant in *Quarto Mining* was injured in 1972 and a claim for certain injuries was allowed. The claimant was unable to return to his original position as an underground mine roof bolter, but ultimately worked in two different positions for the same employer until 1984. *Quarto Mining* at 78. In 1984, the claimant suffered a heart attack; around the same time the mine was closed and he was laid off. *Id.* The claimant stopped working on September 27, 1984, and did not resume employment thereafter. He filed three applications for PTD between 1985 and 1992. The first two PTD applications were denied, but the third was granted based on a finding that the claimant was physically capable of sedentary work, but that his non-medical disability factors precluded him from obtaining sedentary work. *Id.* at 78-79. The employer filed a mandamus complaint alleging the commission erred by failing to address the claimant's heart attack as the reason he stopped working. *Id.* at 80. An appeals court referee recommended granting a writ ordering the commission to determine the voluntariness of the claimant's retirement, but the appeals court rejected that recommendation and held that the employer's failure to raise the retirement issue in the administrative proceedings precluded the employer from raising it in the mandamus case. *Id.*

{¶ 17} On appeal, the Supreme Court affirmed the appellate court decision, noting that the employer did not raise the issue of voluntary abandonment before the commission in any of the three PTD applications. *Id.* at 81. The court rejected the employer's claim that the commission should have considered voluntary abandonment because it was "manifest in the record." *Id.* The court recognized the general rule that an issue is waived on appeal

if not presented to the lower tribunal and reasoned that relaxing that rule in workers' compensation cases would "deny the claimant a meaningful opportunity to respond" and would force the commission to "comb the files of every PTD case in search of issues that could potentially be raised by both sides at the hearing table." *Id*. at 82-83.

{¶ 18} In *Quarto Mining*, as in the present case, there were multiple administrative proceedings in which the issue of voluntary abandonment potentially could have been raised. However, although the *Quarto Mining* decision noted the claimant's second and third PTD applications might have been avoided if the employer had raised voluntary abandonment as a defense to the first application, the key issue was that the employer failed to assert the defense until it filed a mandamus complaint in the court of appeals. *Quarto Mining* at 83 ("[T]he employer sat idly by at each successive hearing, allowing the commission each time to determine the extent of claimant's disability on other grounds. Then, when it finally lost administratively in 1993, the employer raised the issue for the first time in a complaint in mandamus to the court of appeals."). In the present case, by contrast, relator argues that voluntary abandonment was waived for purposes of his 2020 PTD application because it had not been asserted in the 2017 or 2019 TTD proceedings. The underlying reasoning in *Quarto Mining* was that a court would not review an issue that had not been raised at the administrative level. The Supreme Court did not hold that the employer in *Quarto Mining* had waived the issue of voluntary abandonment for later administrative proceedings by failing to raise it in the first administrative proceeding.

{¶ 19} Moreover, as the magistrate's decision notes, this court previously addressed this issue in *Reeves*, and held that voluntary abandonment must be raised by the employer at a time when the claimant has a meaningful opportunity to respond. *Reeves* at ¶ 59-60; *see Jenkins* at ¶ 3-5 (concluding commission violated relator's due process rights by denying PTD application based on voluntary abandonment when no party raised or argued that issue at the administrative hearing and it was raised for the first time in the SHO's written decision, because relator was not given sufficient notice and an opportunity to respond). The magistrate properly found that Sours failed to demonstrate that he did not have a meaningful opportunity to respond to the issue in the administrative proceedings.

{¶ 20} Accordingly, we overrule Sours's second objection.

{¶ 21} Upon review of the magistrate's decision, an independent review of the record, and due consideration of Sours's objections, we find the magistrate has properly determined the pertinent facts and applied the appropriate law. We therefore overrule Sours's objections to the magistrate's decision and adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained therein. Accordingly, the requested writ of mandamus is hereby denied.

*Objections overruled;*
*writ of mandamus denied.*

BEATTY BLUNT, P.J., and JAMISON, J., concur.

———————————

[Cite as *Stat ex rel. Sours v. MGQ, Inc.*, 2023-Ohio-4289.]

# APPENDIX

## IN THE COURT OF APPEALS OF OHIO

## TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Larry Sours, | : | |
| Relator, | : | |
| v. | : | No. 22AP-31 |
| [MGQ, Inc.] et al., | : | (REGULAR CALENDAR) |
| Respondents. | : | |

### M A G I S T R A T E ' S   D E C I S I O N

#### Rendered on July 12, 2023

*Schaffer and Associates*, *L.P.A.*, and *Thomas J. Schaffer*; *The Law Office of Carla A. Lombardo*, *LLC*, and *Carla A. Lombardo*, for relator.

*Dave Yost*, Attorney General, and *Anna Isupova*, for respondent Industrial Commission of Ohio.

*Eastman & Smith Ltd.*, *Sarah E. Pawlicki*, and *Melissa A. Ebel,* for respondent MGQ, Inc.

### IN MANDAMUS

{¶ 22} Relator, Larry Sours ("claimant"), has filed this original action requesting this court issue a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate its order that denied his request for permanent total disability ("PTD") compensation, and to enter an order granting the compensation.

Findings of Fact:

{¶ 23} 1. On July 18, 2015, claimant sustained an industrial injury in the course of and arising out of his employment with respondent Maple Grove Quarry, Inc. (properly referred to as "MGQ, Inc.") when the screen catwalk he was standing on broke, and he fell 15 feet onto a concrete walkway. His workers' compensation claim was initially allowed for compression fracture T12; compression fracture S3; posterior laceration on the scalp; compression fracture C7; right ankle sprain; peroneal tendon tear right; posterior tibial tendonitis right; talofibular ligament tear right; and non-displaced dome close fracture right of talus.

{¶ 24} 2. Following his injury, the employer trained claimant for scale operator, which is a sedentary computer position. On June 20, 2016, claimant stopped performing this job after three weeks, claiming the use of the computer and his wearing of bifocals increased his symptomatology.

{¶ 25} 3. On August 3, 2016, claimant filed an application for PTD compensation.

{¶ 26} 4. On September 29, 2016, Lawrence Kale, M.D., examined claimant for PTD impairment, and in a September 30, 2016, report, Dr. Kale found the following: (1) claimant has reached maximum medical improvement ("MMI"); (2) the combined whole-person impairment for the allowed conditions is 14 percent; (3) claimant can lift/carry up to 10 pounds frequently and 20 pounds occasionally, and must change positions as needed; and (4) claimant is capable of light-duty employment.

{¶ 27} 5. On December 12, 2016, a staff hearing officer ("SHO") held a hearing on claimant's PTD application.  In a December 20, 2016, order, the SHO denied claimant's application for PTD, finding the following: (1) claimant can read, write, and do basic math; (2) his age of 63 years is not a positive vocational factor; (3) the bases for his inability to continue with his sedentary employment with the employer are subjective symptoms and not objective findings, and no ergonomic assessment was made, no attempt at accommodating the computer height, and no change in his glasses were made to improve his agility to use a computer in a sedentary setting; (4) claimant's effort to return to the job was not a good-faith effort; (5) although claimant did participate in vocational rehabilitation and was in the process of transitioning to employment in a sedentary capacity, the SHO is unpersuaded of claimant's inability to continue to perform that work;

(6) claimant's physician of record took claimant off work based on subjective complaints and as a result of wearing glasses, and there is no evidence that an investigation into a change in his glasses was undertaken to accommodate restrictions or impairments due to the allowed conditions; (7) there is no indication that claimant had an inability to learn the skills of the sedentary position of scale operator he worked in for three weeks for the employer; (8) claimant has positive vocational factors for a return to employment; (9) the medical evidence on file supports that claimant could perform sedentary work and perhaps light-duty work; (10) the order is supported by Dr. Kale's September 30, 2016, report, in which he opines claimant is capable of light-duty employment; (11) Dr. Kale's restrictions are well within the requirements of the scale operator's position, for which claimant was being trained; (12) claimant is not precluded from performing sustained remunerative employment on the basis of the allowed conditions; and (13) claimant could be functionally retrained and return to sedentary or light-duty employment with the help of vocational rehabilitation and additional ergonomic accommodations.

{¶ 28} 6. On February 17, 2017, claimant filed a motion requesting an amendment of his claims to add the conditions of major depressive disorder, single episode, moderate; and generalized anxiety disorder. He also requested temporary total disability ("TTD"") compensation from February 14, 2017, forward.

{¶ 29} 7. On April 27, 2017, a district hearing officer ("DHO") held a hearing on claimant's motion requesting an amendment of his claims, and on May 3, 2017, the DHO granted the motion for the additional conditions and ordered payment of TTD compensation from February 14, 2017, forward.

{¶ 30} 8. On November 5, 2018, the Bureau of Workers' Compensation ("BWC") issued an order additionally allowing the claim for substantial aggravation of pre-existing degenerative changes at L3-L5.

{¶ 31} 9. On June 13, 2019, the BWC issued an order additionally allowing the claim for substantial aggravation of pre-existing degenerative changes at L5-S1.

{¶ 32} 10. On June 18, 2019, the DHO issued an order terminating TTD, finding claimant had reached MMI for the allowed psychological conditions.

{¶ 33} 11. On July 9, 2019, the BWC issued an order granting claimant's June 13, 2019, motion and awarding TTD compensation from June 18, 2019, forward.

{¶ 34} 12. On August 27, 2020, Raymond Richetta, Ph.D., performed a psychological evaluation for PTD purposes, and issued a report, finding the following: (1) claimant has a 36 percent whole-person impairment due to the allowed psychological conditions; (2) claimant is psychologically unable to return to work; and (3) claimant is permanently and totally disabled from engaging in any form of sustained remunerative employment due to allowed psychological conditions alone.

{¶ 35} 13. On September 11, 2020, the DHO issued an order terminating TTD, finding claimant had reached MMI for the allowed physical conditions.

{¶ 36} 14. On October 1, 2020, Dr. Jerrold Solomon, D.C., issued a report, in which he found the following: (1) claimant is not able to return to work as a laborer and was unable to work as a scale operator as a result of continued pain; (2) claimant is permanently and totally disabled due to his injury and cannot return to the workforce; (3) claimant is not able to lift, push, pull, or carry any amount of weight; stand, sit, and walk for any length of time; and cannot bend, twist, climb, or use any pedals to operate machinery; (4) claimant is permanently precluded from returning to his regular job as a laborer; and (5) claimant is unable to engage in any sustained remunerative employment.

{¶ 37} 15. On October 5, 2020, claimant filed an application for PTD compensation.

{¶ 38} 16. On December 16, 2020, Sanjay Shah, M.D., examined claimant at the request of the commission for the allowed physical conditions, and on December 19, 2020, Dr. Shah issued a report, finding the following: (1) claimant has reached MMI; (2) combining all of the allowed conditions, claimant has a 46 percent whole-person impairment; (3) claimant should do no lifting or carrying, as he ambulates with a cane and loses balance; (4) claimant should do no overhead activities or those that require increased balance, such as using ladders; (5) claimant can push or pull in a seated position up to five pounds; (6) claimant should avoid bending, twisting, crawling, or overhead activities; (7) claimant should avoid activities that require increased pressure or pushing with the right lower extremity; and (8) claimant is capable of sedentary work with restrictions.

{¶ 39} 17. On December 29, 2020, Mark Babula, Psy.D., examined claimant at the request of the commission for the allowed psychological conditions, and in a report of the same date, Dr. Babula found the following: (1) claimant has reached MMI; (2) claimant has a whole-person impairment of 15 percent; (3) claimant can remain focused for periods of

time but periodically grows distracted or loses his train of thought; (4) claimant grows frustrated and agitated, impacting social aspect of his functioning; (5) claimant lacks confidence in his ability to develop some new skills; (6) claimant is capable of work; however, he would need a position with limited social interaction or the ability to take breaks to remove himself from the social aspects of the job temporarily when frustrated; and (7) claimant would need access to instructions or supervision to assist him when his concentration is impacted, to keep him focused on appropriate tasks, and the job duties must be simple or well-learned.

{¶ 40} 18. On February 10, 2021, Anne Savage Veh conducted a vocational evaluation of claimant, and in her February 17, 2021, report, Ms. Veh found the following: (1) claimant quit his sedentary position with the employer because he began experiencing increased cervical and neck pain due to having to lift his head while looking at the computer screen; subsequently, it was determined he was not a feasible candidate for vocational rehabilitation due to medical instability, and the case was closed on June 22, 2016; (2) due to claimant's physical and exertional limitations, chronic pain, significant balance issues, minimal computer skills, and non-transferrable skills, claimant is precluded from returning to any of his former occupations; (3) while Dr. Shah opined claimant is capable of sedentary work, he cannot stand, sit, or walk in a functional capacity relative to a job task, he is unable to reach, carry, lift, or push or pull at any substantial level for daily activities; he can sit or stand for only 45 minutes and must frequently change positions in order to alleviate a minimum amount of pain and discomfort; (4) claimant's significant limitations place him below sedentary level and would require unrealistic accommodations on an employer's part; an employer is not going to allow an employee to stand up and take a break every 15 to 30 minutes as it would not produce completion of job tasks in a timely or productive manner; (5) Dr. Babula's restriction that supervision or access to instructions be provided is an accommodation that most employers do not have the staff to provide; this is indicative of a sheltered workshop, which claimant does not require; (6) claimant has never worked in a desk position and does not have experience with computers; and (7) based on the above factors, retraining would be ineffective; (8) claimant is totally unemployable for any sustained remunerative employment in the labor market and is 100 percent totally unemployable.

{¶ 41} 19. On March 26, 2021, the SHO held a hearing regarding claimant's request for PTD compensation. In a March 31, 2021, order, the SHO denied the PTD application, finding the following: (1) claimant's previous PTD application was denied by an SHO on December 20, 2016; (2) subsequent to that determination, claimant failed to return to employment, and there were no further attempts at vocational rehabilitation; (3) there is no evidence that claimant searched for light or sedentary work positions; (4) claimant's PTD application indicates he has been receiving social security benefits since September 1, 2016; and (5) subsequent to the prior PTD determination, claimant's inability to work is not related to the allowed conditions but is, instead, a result of his decision not to return to the workforce.

{¶ 42} 20. On January 12, 2022, claimant filed a complaint for a writ of mandamus, requesting this court vacate the commission's order that denied claimant PTD compensation, and to enter an order granting the compensation.

Conclusions of Law and Discussion:

{¶ 43} The magistrate recommends that this court deny the employer's request for a writ of mandamus.

{¶ 44} In order for this court to issue a writ of mandamus, a relator must ordinarily show a clear legal right to the relief sought, a clear legal duty on the part of the respondent to provide such relief, and the lack of an adequate remedy in the ordinary course of the law. *State ex rel. Pressley v. Indus. Comm.*, 11 Ohio St.2d 141 (1967). A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order that is not supported by any evidence in the record. *State ex rel. Elliott v. Indus. Comm.*, 26 Ohio St.3d 76 (1986). On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. *State ex rel. Lewis v. Diamond Foundry Co.*, 29 Ohio St.3d 56 (1987).

{¶ 45} In matters before it, the commission is the exclusive evaluator of the weight and credibility of the evidence. *State ex rel. LTV Steel Co. v. Indus. Comm.*, 88 Ohio St.3d 284, 287 (2000). Therefore, not only is a magistrate not required to evaluate the propriety of the commission's finding that a doctor's report is persuasive, it is inappropriate for a magistrate to engage in such an analysis. *State ex rel. Koepf v. Indus. Comm.*, 10th Dist.

No. 18AP-753, 2019-Ohio-3789, ¶ 9. The commission is not required to note the evidence it finds unpersuasive or the reason for rejecting it, because "[l]ogic dictates that if the identity of rejected evidence is irrelevant, so is the reason for the rejection." *State ex rel. Bell v. Indus. Comm.*, 72 Ohio St.3d 575, 578 (1995). Accordingly, the commission does not need to state why it found one doctor's report more persuasive than that of another doctor. *Id.* at 577. When, however, the commission states a reason for rejecting a report, it may not do so arbitrarily. *State ex rel. Hutton v. Indus. Comm.*, 29 Ohio St.2d 9, 13-14 (1972). To avoid rejecting medical proof arbitrarily, the commission must have, "some reasonable basis for the * * * rejection of a physician's finding." *State ex rel. Eberhardt v. Flxible Corp.*, 70 Ohio St.3d 649, 655 (1994).

{¶ 46} The relevant inquiry in a determination of PTD is claimant's ability to do any sustained remunerative employment. *State ex rel. Domjancic v. Indus. Comm.*, 69 Ohio St.3d 693 (1994). Generally, in making this determination, the commission must consider not only medical impairments but also the claimant's age, education, work record, and other relevant non-medical factors. *State ex rel. Stephenson v. Indus. Comm.*, 31 Ohio St.3d 167 (1987). Thus, a claimant's medical capacity to work is not dispositive if the claimant's non-medical factors foreclose employability. *State ex rel. Gay v. Mihm*, 68 Ohio St.3d 315 (1994). The claimant bears the burden of proving that the allowed conditions in the workers' compensation claim render the claimant unable to return to sustained remunerative employment. *State ex rel. McKee v. Union Metal Corp.*, 150 Ohio St.3d 223, 2017-Ohio-5541, ¶ 9. PTD cannot be based, wholly or partially, on nonallowed medical conditions. *State ex rel. Fields v. Indus. Comm.*, 66 Ohio St.3d 437 (1993). However, the presence of debilitating nonallowed conditions does not preclude PTD compensation so long as the allowed conditions independently prevent sustained remunerative employment. *State ex rel. Waddle v. Indus. Comm.*, 67 Ohio St.3d 452 (1993). Thus, nonallowed conditions can neither advance nor defeat a claim. *Id.*

{¶ 47} R.C. 4123.58(D), effective September 15, 2020, provides, in pertinent part, the following:

> (D) Permanent total disability shall not be compensated when the reason the employee is unable to engage in sustained remunerative employment is due to any of the following reasons, whether individually or in combination:

(1) Impairments of the employee that are not the result of an allowed injury or occupational disease;

(2) Solely the employee's age or aging;

(3) The employee retired or otherwise is not working for reasons unrelated to the allowed injury or occupational disease.

(4) The employee has not engaged in educational or rehabilitative efforts to enhance the employee's employability, unless such efforts are determined to be in vain.

{¶ 48} Ohio Adm.Code 4121-3-34(D)(1)(d), effective February 1, 2021, provides the following:

(D) Guidelines for adjudication of compensation for applications for permanent total disability

The following guidelines shall be followed by the adjudicator in the sequential evaluation of applications for compensation for permanent total disability:

* * *

(d) If, after hearing, the adjudicator finds that the injured worker is not working for reasons unrelated to the allowed injury or occupational disease, the injured worker shall be found not to be permanently and totally disabled.

{¶ 49} Here, claimant presents two general arguments. First, claimant argues that the commission failed to determine his eligibility for PTD compensation based on all of the allowed conditions. Claimant contests the SHO's determination that he decided not to return to the workplace based on claimant's failure to return to employment, failure to look for light or sedentary type work, and failure to attempt further vocational rehabilitation since the prior denial of PTD compensation, as well as the SHO's reliance on the September 30, 2016, report of Dr. Kale, who opined claimant was able to perform sedentary to light work. Claimant contends that the SHO ignored the orders subsequent to the previous denial of PTD compensation that allowed his claim for additional psychological and physical conditions, as well as ordered payment of TTD. Claimant asserts that his physical and psychological condition had dramatically changed since the time of the prior

PTD denial, and Dr. Solomon placed substantial physical restrictions on him that precluded even sedentary work. Thus, during the time the SHO found claimant should be returning to work, searching for light or sedentary positions, or participating in vocational rehabilitation, claimant was suffering from additional physical and psychological conditions that rendered him unable to perform most if not all work, and had been found not to be a candidate for vocational rehabilitation.

{¶ 50} Second, claimant argues the commission waived the affirmative defense of voluntary abandonment. Claimant points out that since the prior denial of PTD compensation, there were two administrative proceedings awarding claimant TTD compensation, and the commission should have raised the defense of voluntary abandonment at these proceedings. Instead, the commission specifically found that claimant was completely unable to work or was substantially restricted from being able to work based on newly allowed conditions. Thus, asserts claimant, the commission was precluded from denying his application for PTD compensation on the basis of this defense.

{¶ 51} The magistrate finds the claimant's arguments unavailing. Initially, the SHO did not directly rely on Dr. Kale's September 2016, report. Instead, the SHO summarized Dr. Kale's earlier report while discussing the SHO's December 2016 denial of claimant's first PTD application. Notwithstanding, the language of the order makes clear that the SHO was aware of all of the allowed physical and psychological conditions and did not ignore any medical reports. The evidentiary conflict here essentially involved the reports of Drs. Shah and Babula, who opined that claimant was capable of some sedentary employment, and the reports of Drs. Solomon and Richetta, who opined claimant was permanently and totally disabled from engaging in any form of sustained remunerative employment. All four doctors were aware of all of the allowed physical and psychological conditions, as is apparent by each doctor's complete recitation of the claim allowances in their respective reports. The acknowledged claim allowances included both the original allowed conditions and the newly allowed conditions. It is clear from the language in the SHO's order that the SHO reviewed and considered all of the evidence. Given the accurate summary of all of the allowed conditions by all of the medical providers, as well as the affirmations by the SHO that all evidence was reviewed and considered, the court can presume regularity and reasonably infer that the SHO was aware of all  of the allowed physical and psychological

conditions in the claim and did not ignore any reports. *See State ex rel. Thompson v. Indus. Comm.*, 10th Dist. No. 06AP-229, 2007-Ohio-698 (there is a presumption of regularity that attaches to commission proceedings, and there is a presumption that the commission considered all the allowed conditions that a doctor considered in his relied upon report); *State ex rel. Jackson v. Indus. Comm.*, 79 Ohio St.3d 266, 268 (1997), fn. 1 (finding that because the commission relied on reports from doctors who took into account all of the claimant's injuries tends to confirm the commission's appreciation of both claims); *State ex rel. Zollner v. Indus. Comm.*, 66 Ohio St.3d 276, 278 (1993) (because PTD denial was premised on the reports of two doctors who evaluated claimant's physical and psychiatric conditions, respectively, the commission clearly took claimant's psychiatric condition into account in denying PTD).

{¶ 52} There is also no evidence that the SHO ignored the TTD orders subsequent to the prior denial of PTD compensation. The SHO began his analysis by looking back to the prior PTD denial, noting that claimant's inability to continue working in his sedentary-duty position was based on subjective symptoms unrelated to his allowed conditions, and his attempt at work was not in good faith. Having expressly reviewed all of the evidence submitted, the SHO must have reviewed the subsequent TTD orders, as well as the evidence submitted since the prior PTD denial, but the SHO apparently found claimant's evidence that he could not engage in employment was not credible. Finding claimant was still capable of engaging in light or sedentary employment consistent with the prior PTD decision, the SHO was tasked with determining why claimant was not engaging in employment. The SHO determined that claimant did not attempt any type of rehabilitation to enable him to return to the workforce since the first PTD-compensation denial, despite the prior SHO believing he could be retrained, and claimant did not conduct any searches for suitable employment consistent with his work level since the prior PTD denial. Thus, the SHO concluded that nothing had occurred since the first PTD denial that would preclude claimant's working in a light or sedentary capacity, and claimant was still not working for reasons unrelated to the allowed injury or occupational disease. In the end, there is nothing to indicate that the SHO ignored the two TTD orders issued after the first PTD denial, or any of the subsequent medical evidence, as discussed above. The SHO simply chose not to rely upon claimant's evidence.

{¶ 53} With regard to claimant's arguments concerning the waiver of the voluntary-abandonment argument, we first address the commission's counterargument that because the legislature has eliminated any reference to "voluntary abandonment" in R.C. 4123.58 and Ohio Adm.Code 4121-3-34(D)(1)(d), that doctrine does not apply to the present case and only the language in R.C. 4123.58 and Ohio Adm.Code 4121-3-34(D)(1)(d) applies. In *State ex rel. Columbus Distrib. Co. v. Reeves*, 10th Dist. 21AP-399, 2023-Ohio-898, this court discussed this issue:

> [T]he Ohio legislature passed H.B. No. 81, which modified R.C. 4123.58, governing PTD (and made rather more significant changes to R.C. 4123.56, governing TTD). The amendments are effective September 15, 2020. The pre-H.B. 81 version contained the following language: "Permanent total disability shall not be compensated when * * * [t]he employee retired or otherwise voluntarily abandoned the workforce for reasons unrelated to the allowed injury or occupational disease." Former R.C. 4123.58(D)(3). After amendment, the equivalent section eschews the phrase "voluntarily abandoned" and provides that PTD shall not be paid when the "employee retired or otherwise is not working for reasons unrelated to the allowed injury or occupational disease." (Emphasis added.) R.C. 4123.58(D)(3). Unlike the concomitant amendments to TTD law, the new language does not contain a legislative admonishment that all prior case law on the topic is nullified by the amendment. *See* R.C. 4123.56(F): "It is the intent of the general assembly to supersede any previous judicial decision that applied the doctrine of voluntary abandonment to a claim brought under this section."
>
> The first question to resolve in a voluntary abandonment case, therefore, is a determination of the governing law, since the legal standards for PTD eligibility may be drawn from governing cases interpreting the former statute, or, to the contrary, H.B. 81's new language that may compel a different result. Although the outcome in the present matter might not vary, the choice of law is still a threshold issue. The magistrate concludes that final adjudications of the commission occurring after the effective date of H.B. 81, as here, should be examined under the amended statute. *State ex rel. Decapua Enters. v. Wolfe*, 10th Dist. No. 20AP-174, 2021-Ohio-3987. The current version of R.C. 4123.58 applies, as well as any subsequent modifications to pertinent regulations.

> In this respect, current Ohio Adm.Code 4121-3-34(D)(1)(d) provides guidelines for commission hearing officers on this topic: "If, after hearing, the adjudicator finds that the injured worker is not working for reasons unrelated to the allowed injury or occupational disease, the injured worker shall be found not to be permanently and totally disabled." Until February 1, 2021, this section read as follows: "If, after hearing, the adjudicator finds that the injured worker voluntarily removed himself or herself from the work force, the injured worker shall be found not to be permanently and totally disabled. If evidence of voluntary removal or retirement is brought into issue, the adjudicator shall consider evidence that is submitted of the injured worker's medical condition at or near the time of removal/retirement." (Emphasis added.) Former Ohio Adm.Code 4121-3-34(D)(1)(d). The amended regulation reflects the impact of H.B. 81 in the choice of terminology.

> Applying the current statute and regulations, the next question is * * *.

{¶ 54} Therefore, based on *Reeves*, R.C. 4123.58(D)(3) and Ohio Adm.Code 4121-3-34(D)(1)(d) apply to the present case, although the new statutory and regulatory language does not contain any express admonishment that all prior case law on voluntary abandonment is nullified by the amendment.

{¶ 55} As for claimant's arguments concerning the commission's waiver of the voluntary-abandonment argument, claimant asserts that the commission failed to raise voluntary abandonment in the prior two administrative proceedings awarding TTD compensation, instead finding that claimant was completely unable to work or was substantially restricted from being able to work based upon newly allowed conditions. This court also addressed this issue in *Reeves*. In that case, we analyzed whether the employer timely raised the issue of whether the claimant was "not working for reasons unrelated to the allowed injury or occupational disease," pursuant to R.C. 4123.58(D)(3). *Id.* We concluded in *Reeves* that "[t]he rule has long been that this is an affirmative defense to be raised by the employer at a point when the claimant has a meaningful opportunity to respond[.]" We noted that the key is that the claimant " 'has * * * been afforded due process, i.e., sufficient notice and an opportunity to present evidence on the issue' and rebut the allegations of abandonment of the workforce." *Id.,* quoting *State ex rel. Navistar, Inc. v.*

*Indus. Comm.*, 160 Ohio St.3d 7, 2020-Ohio-712, ¶ 16, citing *State ex rel. Jenkins v. Indus. Comm.*, 10th Dist. No. 16AP-534, 2017-Ohio-7896, ¶ 5. We found that "nothing in the recent changes to statute and rule supports divergence from the clear requirement expressed in the above cases that 'voluntary abandonment/not working for reasons other' contentions must be affirmatively raised by the employer at a time when the claimant could address the issue." *Id.* This court found that raising an argument in a motion for reconsideration before the commission is not a timely assertion of the affirmative defense, and the argument must be raised, at the latest, before the SHO and perhaps even before the DHO.

{¶ 56} In the present case, claimant has presented no case law for his claim that the failure to raise the voluntary abandonment/"not working for reasons unrelated" contentions in prior TTD proceedings waives the issue for purposes of a later PTD determination. Furthermore, as explained in *Reeves*, the touchstone of due process is that the defense must be raised at a point when the claimant has a meaningful opportunity to respond so that the claimant has sufficient notice and an opportunity to present evidence on the issue and rebut the allegations of abandonment of the workforce, such as in hearings before the SHO or DHO. Here, although the record before the magistrate does not include briefs or transcripts of the hearings before the commission, claimant does not make any claim that this issue was not raised before the SHO. That the SHO addressed the issue suggests that it was raised. Thus, claimant had a meaningful opportunity to address the issue of voluntary abandonment/"not working for reasons unrelated" before the commission. Therefore, lacking any authority for the proposition that the commission cannot grant TTD but then subsequently deny PTD, claimant's waiver argument is without merit.

{¶ 57} For the above reasons, the magistrate finds there was some evidence to support the SHO's determination. The case presented a classic battle between each party's evidence. The employer relied on Drs. Shah and Babula, and claimant relied on Drs. Solomon and Richetta. The commission found Drs. Shah and Babula more credible, and the magistrate finds the SHO did not abuse his discretion when he denied claimant PTD compensation based on the evidence and record.

{¶ 58} Accordingly, it is the magistrate's recommendation that this court should deny claimant's request for a writ of mandamus.

/S/ MAGISTRATE
THOMAS W. SCHOLL III

**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b). A party may file written objections to the magistrate's decision within fourteen days of the filing of the decision.